UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20483-CIV-SCOLA/MCALILEY

ANGEL RODRIGUEZ FUENTES, *et. al*,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

vs.

SECURITY FOREVER LLC, *et. al,*

    Defendants.
_____/

### REPORT AND RECOMMENDATION ON MOTION TO COMPEL ARBITRATION

On February 9, 2016, multiple employees of the Defendant, Security Forever LLC, filed this putative collective action claiming that Defendants violated Plaintiffs' rights under the Fair Labor Standards Act ("FLSA"). [DE 1]. Almost a year later, on January 17, 2017, Defendants for the first time moved this Court to compel arbitration of this dispute. [DE 197]. They did so in reliance on a mandatory arbitration clause set forth in the employment agreement between each Plaintiff and Security Forever. Plaintiffs oppose Defendants' motion, contending that Defendants have waived their right to arbitration. [DE 200]. Defendants' motion is fully briefed and the Honorable Robert N. Scola, Jr. has referred the matter to me. [DE 203, 206, 211].

The motion presents a close question. At first blush it would appear that by waiting so long to raise this issue, Defendants waived their right under the employment contracts to arbitrate this dispute. However, after a careful review of the applicable law and a detailed review of this record, I am persuaded that the doctrine of wavier does not apply here, and that the Court should compel arbitration.

**I.      Procedural History**

This lawsuit has been hotly contested since it was filed and yet, after more than 200 hundred docket entries, little progress has been made on the merits. Notably, the action has not been active the entire time. Late last year it was stayed for several months due to defense counsel's poor health. [DE 150, 157]. And, once the motion to compel arbitration was filed, substantive proceedings were abated pending resolution of that issue. [DE 220]. When the case has been active, the parties have been mired in disputes about discovery and sanctions. Before turning to the legal issues, I review what has transpired in this lawsuit.

**1.      Pleadings**

The first several months were largely devoted to the filing of a series of complaints. Four Plaintiffs initiated this lawsuit with a claim for unpaid overtime wages. [DE 1]. Plaintiffs then sought and obtained leave, on three occasions, to amend their complaint to add additional plaintiffs. [DE 9, 15, 25, 42]. Defendants did not oppose the filing of those amended complaints, but they did move to dismiss the first and second amended complaints arguing they improperly joined Plaintiffs. [DE 18, 23]. The Court denied those motions as moot in light of the third amended complaint. [DE 27, 42].

Defendants moved to dismiss that complaint too, because Plaintiffs had not separately filed it as the Court had directed in its April 12, 2016, Order. [DE 42, 50].

While that motion was pending, Plaintiffs twice sought leave to file a fourth amended complaint. First, the Plaintiffs advised they needed to drop six plaintiffs and add a retaliation claim for two plaintiffs. [DE 37]. The Court denied that motion without prejudice. [DE 42]. In the same motion, counsel for Plaintiffs asked to withdraw from representing those six plaintiffs because they had written Plaintiffs' counsel to say they did not want to pursue the lawsuit. Plaintiffs' counsel speculated that Defendants had coerced those Plaintiffs to do so, but because Plaintiffs' counsel had been unable to communicate with those clients, they asked to withdraw as counsel. [DE 37]. The Court granted the motion to withdraw. [DE 44].

Later, in mid-April 2016, Plaintiffs filed a renewed motion for leave to file a fourth amended complaint. [DE 45]. Defendants opposed that motion, [DE 49], and Plaintiffs withdrew it before the Court ruled. [DE 54]. Plaintiffs then moved again for leave to file a fourth amended complaint. [DE 56]. They advised that Plaintiffs' counsel was again representing the six plaintiffs who before had said they wanted to withdraw from the lawsuit. [DE 56, ¶ 4]. The proposed fourth amended complaint added retaliation claims for those six plaintiffs, as well as retaliation claims for two other plaintiffs, and changed the dates of employment."[1] [*Id.* at ¶¶ 4, 13-14].

On May 6, 2016, the Court granted Plaintiffs' request to file the fourth amended complaint, which the Court deemed filed as of that date. [DE 57]. Thus it took three

---

[1] This motion also included other requests for relief, which I address below.

months before the Court had the operative Complaint. [DE 58]. It asserts claims for all Plaintiffs under the FLSA for unpaid overtime wages and brings a retaliation claim under the FLSA for some Plaintiffs. [*Id.*, pp. 3-13]. Defendants moved to dismiss that Complaint, again arguing that it improperly joins Plaintiffs. [DE 65]. That motion is pending.[2]

### 2. Sanctions

Most of the parties' and the Court's time has been devoted to competing claims of misconduct and motions for sanctions.

This began in April 2016, when Defendants filed a motion under Rule 11 of the Federal Rules of Civil Procedure for sanctions. [DE 38]. They claimed Plaintiffs' counsel had not consulted several plaintiffs before they filed the Complaint. [*Id.*]. According to Defendants, at least one Plaintiff later tried to advise counsel that the overtime allegations were false, but was ignored. [*Id.*]. Defendants attached affidavits from the affected Plaintiffs attesting to the allegations in the Rule 11 motion. [DE 38-1].

Plaintiffs responded by leveling their own charges of misconduct against Defendants. They alleged Defendants coerced some Plaintiffs to abandon their claims and threatened to retaliate if they went forward with their lawsuit. [DE 46]. Judge Scola referred the Rule 11 motion to Magistrate Judge Alicia M. Otazo-Reyes. [DE 43]. Judge Otazo-Reyes scheduled an evidentiary hearing for May 18, 2016. [DE 48].

---

[2] As noted, the Court stayed this action, which resulted in the termination of all pending motions, including Defendants' motion to dismiss. [DE 150, 157]. Once the Court lifted the stay, Defendants renewed their motion to dismiss the fourth amended complaint, [DE 163], and that motion remains pending.

Shortly before the scheduled hearing, Plaintiffs' counsel resumed their representation of the plaintiffs they had earlier withdrawn from representing. [DE 53]. Plaintiffs then filed their own motion for sanctions, accusing Defendants and defense counsel of wrongdoing. [DE 56, pp. 8-10]. They claimed that Defendants tried to bribe, and threatened and intimidated, certain Plaintiffs to disavow their claims. [*Id.*; *see also* DE 55-1 through 55-7]. They also claimed defense counsel was present when some of this misconduct took place and had unauthorized communications with certain Plaintiffs. [DE 56, p. 9]. Plaintiffs asked the Court to sanction Defendants and their counsel and to enjoin them from any further direct contact with Plaintiffs or their family members. [DE 56, p. 7]. Judge Scola referred these motions to Judge Otazo-Reyes. [DE 57].

Judge Otazo-Reyes rescheduled the evidentiary hearing on Defendants' Rule 11 motion for June 2, 2016, and expanded the hearing to include Plaintiffs' motions for sanctions and injunctive relief. [DE 63]. Between June 2 and July 12, 2016, over the course of five full days, she heard testimony from 19 witnesses and received other evidence, without concluding the hearing. [DE 69, 85-86, 88, 100, 215]. Judge Otazo-Reyes scheduled the hearing to resume on August 18, 2016, but had to cancel that hearing because of defense counsel's intervening medical problems. [DE 101, 119, 124]. Those health concerns caused Defendants to ask the Court to stay this action, [DE 130, 147, 153, 155], and in early September, 2016 the Court did so for three months. [DE 131, 150, 156].

On December 16, 2016, the stay was lifted and the case reopened. [DE 157]. The parties renewed their motions for sanctions and motion for injunctive relief, which Judge

Scola again referred to Judge Otazo-Reyes. [DE 164, 166, 176]. Judge Otazo-Reyes did not hold the continued evidentiary hearing on those motions because on February 3, 2017, she recused herself from these proceedings, at which time the case was transferred to me. [DE 211].

### 3. Discovery

Both parties have engaged in discovery, although Plaintiffs appear to have initiated more discovery than Defendants. Both parties issued interrogatories, requests for production and requests for admissions, and provided responses and objections thereto. [DE 141-2 through 141-9; DE 145-1 through 142-2; DE 148-1 through 148-2]. Both also filed motions to compel better responses to their respective written discovery requests. [DE 70, 141, 145, 146, 148]. Several of these motions remain pending. [DE 159-161; DE 194].[3] The scheduling order states that discovery concluded on March 1, 2017. [DE 178].

In addition to written discovery, Plaintiffs have taken seven depositions and have inspected Defendants' property. [DE 167]. Plaintiffs sought leave to take at least fourteen more depositions and to inspect three additional properties. [DE 167, 168]. Those motions are pending. Defendants have not deposed any third party witnesses or Plaintiffs. [DE 203, p. 4].

## II. Analysis

Defendants filed a motion to compel arbitration on January 17, 2017. [DE 197]. The motion relies on identical employment agreements between the parties, signed by

---

[3] The initial motions to compel were terminated when the case was stayed. [DE 150]. These docket entries reflect renewed motions to compel that Plaintiffs and Defendants filed after the stay was lifted. The renewed motions are essentially the same as their predecessors.

each Plaintiff, and which Defendants filed with the Court. The agreements have this provision:

> 14. **Arbitration of Disputes**. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes, and judgment upon the award rendered by the arbitrator(s) may be entered by any court having jurisdiction thereof.

[DE 197-1, pp. 2, 4, 6, 8, 10, 12, 14, 17, 19, 21]; [DE 218-1, p. 2]. This clause is at the end of each employment agreement, immediately above the employee signature line. [*Id.*].

### 1. The arbitration agreements are enforceable

Federal law plainly favors arbitration. The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court stated that the FAA "embodies a liberal federal policy favoring arbitration agreements," *id*, and "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (citations omitted).

Courts apply state law contract principles to determine whether an arbitration agreement is enforceable. *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) "The federal policy favoring arbitration, however, is taken into

consideration even in applying ordinary state law." *Id*. (citation omitted).[4] As the party opposing arbitration, Plaintiffs have the burden to show that the mandatory arbitration agreements are unenforceable. *See Bhim v. Rent-A-Center, Inc.*, 655 F.Supp.2d 1307, 1311 (S.D. Fla. 2009).

Plaintiffs do not dispute that these arbitration agreements are enforceable. Rather they "assum[e] a valid agreement to arbitrate exists between the parties in this case," but urge that Defendants waived their right to enforce those agreements. [DE 200, p. 3].

In fact, it is clear that the arbitration agreements are enforceable. The arbitration clause is conspicuous, written in standard typeface, clearly labeled and positioned immediately above the signature block. [DE 197-1, pp. 2, 4, 6,8, 10, 12, 14, 17, 19, 21]; [DE 218-1, p. 2]. It is supported by consideration, as both parties agreed to arbitrate their claims, and Defendants offered to employ Plaintiffs without an obligation to do so.[5] Moreover, Plaintiffs' FLSA claims are within the scope of the arbitration clause, as it applies to "[a]ny controversy or claim arising out of or relating to this [employment] contract or the breach thereof…."

Thus, the only question is whether Defendants waived their right to enforce the parties' agreement to arbitrate this dispute.

---

[4] Florida contract law applies here, as the parties executed their mandatory arbitration agreements in this State, their dispute regarding unpaid wages arose here and the arbitration agreements do not require application of a different state law.

[5] *See Bhim*, 655 F.Supp.2d at 1312-13 ("Mutually binding promises to arbitrate provide consideration for one another, and give rise to an enforceable arbitration agreement."); and *Tranchant v. Ritz Carlton Hotel Co., LLC*, No. 2:10-cv-233-FtM-29DNF, 2011 WL 1230734, at *4 (M.D. Fla. March 31, 2011) (continued employment of an employee is adequate consideration to support the arbitration agreements).

### 2. Defendants Did Not Waive Their Right to Arbitrate

Even if an arbitration agreement is enforceable, courts will not compel arbitration when the party seeking arbitration has waived its right to arbitrate. This Circuit employs a two-part test to determine if waiver occurred.

First, the Court must determine "whether under the totality of the circumstances, the party [seeking arbitration] has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of America, Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (quotation marks and citation omitted). This is established when the party seeking arbitration "substantially participates in litigation to a point inconsistent with an intent to arbitrate." *Garcia v. Acosta Tractors, Inc.*, No. 12-21111-CIV, 2013 WL 462713 at *4 (S.D. Fla. Feb. 7, 2013).

Second, the Court must determine whether the movant's participation in litigation has prejudiced the opposing party. *Ivax*, 286 F.3d at 1315. Here, courts consider the length of delay in demanding arbitration, the expense incurred by the opposing party from participating in litigation, and the use of pre-trial discovery procedures by the party seeking arbitration. *Garcia*, 2013 WL 462713 at *4. To defeat arbitration, the opposing party -- here, Plaintiffs -- must establish both elements of the waiver test. *Id.* at *5-*8 (holding plaintiffs failed to demonstrate defendants waived their right to arbitrate where plaintiffs did not establish requisite prejudice even though defendants litigated case in a manner inconsistent with right to arbitrate). "[B]ecause federal policy strongly favors arbitration, the party who argues waiver bears a heavy burden." *Id.* at *3.

### 3. Defendants Acted Inconsistently With an Intent to Arbitrate

Plaintiffs are correct that Defendants have actively engaged in this litigation. This however, does not automatically demonstrate a party's intention to not arbitrate. The Court must consider the nature of Defendants' actions.

Here, we know with certainty that Defendants had no intent to arbitrate until shortly before they filed their motion. This is because defense counsel had no knowledge of the arbitration agreements until that time, as she did not read the employment contracts until nearly a year after this lawsuit was filed. [DE 197, p. 4; DE 203, p. 2]. Defendants produced the employment agreements to Plaintiffs, in response to a discovery request, in June, 2016, without defense counsel reading them. [DE 197, p. 4].

Employment contracts are among the very first documents a lawyer must read upon the filing of an employment lawsuit. It is very difficult to understand how defense counsel did not immediately ask her client, when she was retained, for any employment contracts, much less read the contracts her clients produced in discovery.[6]

Defendants' handling of this lawsuit was consistent with their ignorance of the mandatory arbitration clause in their employment contracts and their obvious intent to proceed with this litigation. First, they filed a series of motions to dismiss the various

---

[6] Defense counsel shifted all responsibility to her clients, when she wrote that the reason the arbitration clause did not come to her attention earlier is because her client, Mr. Llanes, the owner of Security Forever, is unsophisticated and did not appreciate the significance of the arbitration clause in his employment agreements. [DE 203, p. 1]. It was counsel's responsibility to ask her clients if they had any employment contracts with Plaintiffs, to read them and explain their significance to her clients.

10

complaints[7] and a Rule 11 motion. It is important to note, however, that these motions are not necessarily "inconsistent with the intent to arbitrate." *See Dockeray v. Carnival Corporation*, 724 F.Supp.2d 1216, 1222 (S.D. Fla. 2010) ("a party does not waive its right to arbitrate a dispute by filing a motion to dismiss…"); *see also Wilson v. Par Builders II, Inc.*, 879 F.Supp. 1187, 1189 (M.D. Fla. 1995) ("The Court does not find the defendants' testing of the viability of the complaint, by way of motion to dismiss, to be inconsistent with invoking the right to arbitration."). As for Defendants' Rule 11 motion, it does not conflict with an intent to arbitrate because requesting dismissal of an allegedly frivolous claim is warranted in any proceeding, whether in this Court or in arbitration.

Defendants also filed a motion to compel Plaintiffs to serve better responses to Defendants' written discovery, a motion for protective order regarding anticipated third party depositions and various motions to reschedule depositions that Plaintiffs noticed. [DE 71, 77, 92, 106, 112, 141, 194]. As for discovery, Defendants served interrogatories, requests for production and requests for admissions, responded to Plaintiffs' written discovery and made certain witnesses available for deposition. [DE 141-2 through 141-9, 145-1, 148-2, 167 at p. 1].

Unlike Defendants' motion to dismiss and Rule 11 motion, this activity is directed at the merits of Plaintiffs' claims. Some courts have found that a party's participation in discovery supports a finding of waiver; *see e.g., Snelling & Snelling, Inc. v. Reynolds*,

---

[7] Defendants filed a motion to dismiss each time Plaintiffs amended their complaint, and thus there are several motions to dismiss in the record. However, the motions rely on the same basis – improper joinder – and thus are substantively identical. The only exception is Defendants' motion to dismiss Plaintiffs' third amended complaint, in which Defendants sought dismissal for Plaintiffs' alleged failure to comply with the Court's prior Omnibus Order.

140 F.Supp.2d 1314, 1322 (M.D. Fla. 2001) (defendant substantially participated in litigation where, among other things, he requested document production, served written discovery and responded to plaintiffs' written discovery); while other courts have reached the opposite conclusion; *see Hodgson v. Royal Caribbean Cruises, Ltd.*, 706 F.Supp.2d 1248, 1257-58 (S.D. Fla. 2009) (defendant did not actively litigate case even though it served discovery on plaintiff and answered plaintiffs' discovery requests). The context of the defendants' other conduct is indispensable to answering this question.

Defendants also filed a joint scheduling report with the Court. [DE 29] That report makes no mention of arbitration; instead it proposes deadlines leading to and including trial. [*Id*]. This plainly conveys intent to litigate rather than resolve the case through arbitration. *See e.g., Garcia*, 2013 WL 462713 at *5 ("Defendants [ ] proceeded in a manner which seemingly manifested an intent not to proceed with arbitration, including …submitting a scheduling report which was silent as to arbitration and referenced Plaintiffs' right to a jury trial, and serving their initial requests for documents and interrogatories.").

In sum, I conclude that this record as a whole demonstrates that Defendants "substantially invoke[d] the litigation machinery prior to demanding arbitration"[8] in a manner and to an extent that was inconsistent with an intent to arbitrate.

### 4. **Plaintiffs Have Not Been Substantially Prejudiced**

The next question is whether Plaintiffs have established that they were substantially prejudiced by Defendants' participation in this lawsuit. It is not enough that

---

[8] *See Dockeray,* 724 F. Supp.2d at 1221 (citation omitted).

Plaintiffs suffered some prejudice. "There must be a showing of substantial prejudice to [Plaintiffs] to justify finding a waiver." *Wilson,* 879 F.Supp. at 1189.

As noted, a finding of substantial prejudice turns on the length of Defendants' delay in demanding arbitration, the expense Plaintiffs incurred from participating in litigation, and Defendants' use of pre-trial discovery procedures. *Garcia,* 2013 WL 462713 at *4. "The prejudice that courts are examining in this context involves whether the opposing party expends the types of litigation expenses that arbitration was designed to alleviate." *Grigsby & Associates, Inc. v. M Securities Investment, Inc.*, No. 06-23035-Civ-Cooke/Turnoff, 2013 WL 12094847 at * 4 (S.D. Fla. Oct. 7, 2013).

Starting with Defendants' delay, they waited eight months before seeking arbitration. This is a considerable delay, but does not alone establish prejudice. *See Grisby*, 2013 WL 12094847 at *4.

As for Plaintiffs' expenses, unquestionably the lion's share came from the litigation of both parties' motions for sanctions. Defendants' Rule 11 motion it is not the type of expense that arbitration is designed to avoid, as dismissal of an allegedly frivolous claim could be raised in arbitration. The same is true for Plaintiffs' motion for sanctions: no doubt if the same alleged events took place in arbitration, Plaintiff would have sought sanctions there too.

The sanctions motions have consumed significant resources of the parties and the Court. If the parties wish to pursue those issues, they will have to begin anew whether this dispute proceeds before this Court or in arbitration. The sanctions hearing has not been completed. If the matter stays here, I will have to start the evidentiary hearing from

13

the beginning, given Judge Otazo-Reyes' recusal mid-hearing. Judge Otazo-Reyes heard testimony from many witnesses and there are significant credibility disputes which I cannot resolve without hearing the witnesses myself.[9] The same will be true for any arbitrators.

Plaintiff is correct that an arbitrator is "unfamiliar with the case and [ ] will have to take a significant amount of time to get familiarized with this fact intensive and contentious litigation that involves numerous parties." [DE 200, p. 4]. But the same holds true for me, as I am new to the case following Judge Otazo-Reyes' recent recusal. As for Judge Scola, he has yet to address the merits of this action, putting him in essentially the same position as any arbitrators.

No doubt, Plaintiffs have also expended considerable resources on discovery. They have devoted more resources to seeking discovery, than to responding to Defendants' discovery demands. This does not amount to prejudice as Plaintiffs likely received discovery they might not have gotten in arbitration. *See e.g., Hodgson*, 706 F.Supp.2d at 1258 ("It is…hard to understand how the discovery that [plaintiff] received could have prejudiced him.").

For their part, Defendants have issued some limited discovery, namely a set of interrogatories, request for production and request for admissions. They have not taken

---

[9] Rule 63 of the Federal Rules of Civil Procedure would permit the parties recalling any witness whose testimony is material and in dispute. Fed. R. Civ. P. 63 ("If a judge conducting a hearing or trial is unable to proceed…the successor judge must, at a party's request, recall any witness whose testimony is material and disputed and who is available to testify again without undue burden."). *See also, In re Karten*, 293 Fed. Appx. 734, 736 (11th Cir. 2008) ("If a judge presiding in a civil bench trial steps down before making findings of fact and conclusions of law, a successor judge generally cannot make credibility determinations and should retry the case.").

14

any depositions. [DE 203, p. 4]. I recognize that Defendants' written discovery caused Plaintiffs to incur expense in preparing objections and/or responses thereto. [*See* DE 194-2]. However, viewing their conduct as a whole, Defendants have made relatively minimal use of pre-trial discovery procedures.

In sum, by far the majority of Plaintiffs' efforts either benefitted them, or were not the type that arbitration was designed to alleviate.[10] No doubt Plaintiffs have been prejudiced to some degree by Defendants' participation in this lawsuit. But I do not believe it rises to the level of substantial prejudice and, therefore, Plaintiffs have not carried their "heavy burden" to establish Defendants' waiver of their right to arbitration. I reach this conclusion guided by the principal that "waiver of arbitration is not to be lightly inferred," *Wilson*, 879 F.Supp. at 1189, and any doubts should be resolved in favor of arbitration. *See Hodgson*, 706 F.Supp.2d at 1258 ("Doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is…an allegation of waiver…") (citations omitted).

### III. Recommendation

Based on the foregoing, I **RESPECTFULLY RECOMMEND** that Defendants' Motion to Compel Arbitration and Dismiss or Stay Case [DE 197], be **GRANTED**.

### IV. Objections

**No later than fourteen days from the date of this Report and Recommendation** the parties may file any written objections to this Report and

---

[10] I recognize that Plaintiffs also incurred expenses preparing memoranda in opposition to Defendants' motions to dismiss. However, this is not the type of expense that arbitration was designed to alleviate, as a party is free to seek dismissal of a claim in arbitration.

Recommendation with the Honorable Robert N. Scola, Jr., who is obligated to make a *de novo* review of only those factual findings and legal conclusions that are the subject of objections. Only those objected-to factual findings and legal conclusions may be reviewed on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985), *Henley v.* Johnson, 885 F.2d 790, 794 (11th Cir. 1989), 28 U.S.C. § 636(b)(1), 11th Cir. R. 3-1 (2016).

RESPECTFULY RECOMMENDED in chambers at Miami, Florida, this 24th day of May, 2017.

_____
CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

cc:  The Honorable Robert N. Scola, Jr.
     All counsel of record